IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CECIL RAY, JR.,

    Petitioner,

v.                                                                            Civil Action No. 3:10-CV-57
                                                                            Criminal Action No. 3:06-CR-8-1
                                                                            (Judge Bailey)

UNITED STATES OF AMERICA,

    Respondent.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On January 19, 2006, Cecil Ray, Jr. ("Ray" or "Petitioner") was named in two counts of an eleven-count indictment alleging conspiracy to possess with intent to distribute, in excess of fifty grams of cocaine base, a violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) ("Count One"), and aiding and abetting the distribution of 1.95 grams of cocaine base within 1000 feet of a school, a violation of 21 U.S.C. § 841(a)(1) ("Count Eight"). (Crim. Doc. 1). After a jury trial, Ray was found guilty on both Counts One and Eight and was sentenced to life imprisonment on Count One and forty years imprisonment on Count Eight to run concurrently. (Crim. Doc. 265). On appeal, the U.S. Court of Appeals for the Fourth Circuit affirmed the decision of the District Court. (Crim. Doc. 314).

On June 4, 2010, Ray filed a motion under 28 U.S.C. § 2255 alleging multiple grounds of ineffective assistance of counsel. (Civ. Doc. 1). U.S. Magistrate Judge John S. Kaull recommended that Ray's § 2255 motion be denied. (Civ. Doc. 8). U.S. District Judge John Preston Bailey adopted Judge Kaull's report and recommendation and dismissed Ray's § 2255 motion and motion for an

evidentiary hearing. (Crim. Doc. 348). Ray appealed the District Court's order, and the Fourth Circuit granted Ray's certificate of appealability. (Civ. Doc. 18).[1] In an unpublished per curiam opinion, the Fourth Circuit vacated in part the District Court's dismissal of Ray's § 2255 motion "with instructions to grant Ray an evidentiary hearing on his claim that counsel was ineffective in advising Ray to reject the Government's second plea offer and his related claim that counsel failed to accurately advise him of the consequences of rejecting this offer." *Id.*

Based on the Fourth Circuit's opinion, Judge Bailey referred this matter to the undersigned "for consideration, including conducting an evidentiary hearing, and entering into the record a written Report and Recommendation setting forth findings of fact and a recommended disposition." (Civ. Doc. 20). An evidentiary hearing and argument was held on May 5, 2014. Ray appeared by video conference and by his attorney Scott C. Brown, Esq, in person. The Government appeared by Paul T. Camilletti, Esq., in person. During the hearing, this Court heard testimony from Petitioner, Francisco Saldana, John Mark Sutton, Esq, and B. Craig Manford, Esq. Based on the testimony and evidence presented, the undersigned submits the following report and recommendation.

## II. FINDINGS OF FACT

As stated above, on January 19, 2006, Plaintiff was charged in two counts of an eleven-count indictment of conspiracy to distribute cocaine base ("Count One") and aiding and abetting in the distribution of cocaine base ("Count Eight"). On January 31, 2007, John Mark Sutton, Esq., ("Sutton") was appointed to represent Ray. Sutton represented Ray from January 31, 2007, to March 30, 2007. During Sutton's representation of Ray, two plea deals were offered by the Government.

---

[1] *United States v. Ray*, 547 F. App'x 343, 346 (4th Cir. 2013).

2

The first plea deal was offered on February 6, 2007. Also on February 6, 2007, Sutton met with Ray for the first time. During that meeting, Sutton advised Ray to reject the Government's first plea deal based on Sutton's opinion on the strength of the Government's evidence against Ray. On March 21, 2007, Sutton received a second plea deal offer from the Government. The second plea deal contained a stipulation lowering the amount of cocaine base from 242 grams, as presented in the first plea deal, to a range of 50-150 grams. On March 30, 2007, Ray retained B. Craig Manford, Esq. ("Manford") and Sutton was released as counsel. Once Manford was retained, Sutton provided Manford his case file, including notes, discovery, and the pending second plea deal by the Government.

When asked about the second plea deal offered by the Government, Manford testified that Ray was not interested in pleading, and "his interests were going to trial." Tr. 76:18-19 May 5, 2014. Nevertheless, Manford testified that he did discuss the responsibilities and ramifications of going to trial and discussed the possibility of the Government's second plea offer. Tr. 76:20-77:2. Specifically, Manford informed Ray that the conspiracy count carried a possible life sentence and the relevant conduct of the Government's plea offer lowered the stipulated cocaine base amount to 50–150 grams. Tr. 84:11-17.

Contrary to Manford's testimony, Ray testified that "Manford did not discuss what [he] was facing" if Ray took his case to trial. Tr. 50:13. Ray testified that, in fact, Sutton, not Manford, informed Ray about the second plea deal and presented the plea deal to him. However, Ray maintained that although Sutton "presented [the second plea deal] to [Ray] . . . he did not tell [Ray] that [he] would be receiving 360 to life." Tr. 45:16-18. Therefore, based on Sutton's incomplete advice as to the contents of the second plea offer and ramifications of going to trial, Ray testified that he "rejected [the Government's second plea deal] on the advice of [his] counsel . . ." Tr. 47:2.

3

Sutton testified that although he discussed the relevant conduct stipulations of the Government's first plea deal with Ray, he denied meeting with Ray "with regard to the second plea agreement." Tr. 63:23-24.

It is clear that Ray, Manford, and Sutton present different findings of fact about the advice and counsel Ray received prior to rejecting the Government's second plea deal. However, the undersigned finds much of Ray's testimony not credible. Ray's testimony is largely inconsistent and several of his previous statements directly contradict statements made during the evidentiary hearing. For example, during the hearing, Ray testified that Sutton did not review the second plea deal with him, and only "gave it to [him] to read . . . ." Tr. 45:2. However, in an earlier affidavit, Ray wrote that "Sutton informed me that the Government was offering me a plea . . . [and] I would have to plead guilty to distributing at least 50 to 150 grams of crack, and that I was facing ten to life. [Sutton] told me that I would probably . . . do 20 years if I took the plea." Tr. 45:4-9. Even after being presented with his earlier affidavit, Ray maintained that Sutton "did not tell [him] that [he] would be receiving 360 to life." Tr. 45:17-18. Also, contrary to Manford's testimony, Ray testified that Manford did not go over the Government's second plea with him and only left the plea for Ray to read for himself. Tr. 50:13-15. Ray maintained this position even after being presented with an earlier affidavit that stated that Manford instructed Ray he "was facing ten to life." Tr. 50:6. The same affidavit also contrastingly stated that Manford "was not part of the first and second plea discussions." Tr. 51:24-52:1.

Further, evidence presented during the hearing showed that a third plea deal was presented by the Government and rejected by Ray. According to an email dated August 16, 2007, thirteen days prior to trial, the Government offered a third plea deal "with a stipulated relevant conduct of 35 to

50 grams[s], which is a drop in two levels." Tr. 57:1-2. In another email, dated August 17, 2007, Manford wrote that "Ray is not interested in the plea offer. I have only had a chance to speak with him over the phone about it and will be going to see him this weekend to speak to him in person." Tr. 57:21-24. Although Ray's case continued to trial, Ray denied rejecting this third plea deal "because [he] never knew nothing about it . . . [and] Manford never spoke to [him] over the phone and he never talked to [him] about this plea." Tr: 58:7-9. The evidence of the emails further damages Ray's credibility as to his testimony on what advice counsel gave Ray with respect to the Government's second plea offer.

### III. DISCUSSION

Based on the Fourth Circuit's remanded instructions, this Court's subsequent review of Ray's § 2255 motion is limited. The Fourth Circuit instructed the District Court only to conduct an evidentiary hearing on Ray's claims "that counsel was ineffective in advising Ray to reject the Government's second plea offer and his related claim that counsel failed to accurately advise him of the consequences of rejecting that offer." *United States v. Ray*, 547 F. App'x 343, 346 (4th Cir. 2013).

Ineffective assistance of counsel in the context of plea bargains is governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Missouri v. Frye*, 132 S. Ct. 1399 (2012). Therefore, "[t]o succeed on his ineffective assistance claim, Ray must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance was prejudicial." *Ray*, 547 F. App'x at 346 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

As to the first prong, Ray has the burden to show that counsel's performance was deficient.

5

*Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). Further, "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). In the consideration of plea deals, a counsel's performance is deficient if they are "complet[ly] ignoran[t] of the relevant law under which his client was charged, and . . . [provide] gross misadvice to [a] client regarding the client's potential prison sentence . . . ." *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001); *see also United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("By grossly underestimating [defendant's] sentencing exposure in a letter to his client, [counsel] breached his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.") (internal quotation marks omitted). Although counsel need not provide "anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines . . . a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). Additionally, "[a]lthough a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives." *Burt*, 134 S. Ct. at 17.

In this case, Ray has failed to show that his counsel was deficient in advising him to reject the Government's second plea offer. Testimony reveals that Ray was not interested in taking a plea and desired to take his case to trial. Even so, Manford, Ray's second attorney, discussed with Ray the ramifications of going to trial and the possibilities of a plea. Manford informed Ray of the consequences of rejecting the Government's second plea deal and the relevant conduct stipulated in the plea deal. Further, the evidence shows that Ray's attorney is a competent and experienced criminal defense lawyer. During the hearing, Manford testified that he had been practicing law since

1996 and has been taking criminal appointed cases since 1997. Tr. 59:21-60:9. Further, Manford testified that he had studied the Federal Sentencing Guidelines, participated in seminars about the Guidelines, participated in seminars about federal criminal procedure, and has kept abreast of new case law in federal criminal procedure. Tr. 60:17-61:8. Based on the undersigned's findings as to Ray's credibility and "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Ray has failed to show that Manford was ineffective in counseling Ray about the nature of the Government's second plea deal or consequences of continuing to trial. *Strickland*, 466 U.S. at 689.

To satisfy the second *Strickland* prong, Ray "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 689). However, "to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible." *Merzbacher v. Shearin*, 706 F.3d 356, 366-67 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 71 (2013). For reasons explained above, Ray's testimony is not credible. Further, the evidence at the evidentiary hearing revealed that, only days before trial, a third plea offer was presented by the Government and rejected by Ray. The Government's third plea deal stipulated to "relevant conduct of 35 to 50 gram[s]," a significant reduction from the 50 to 150 gram stipulation present in the Government's second plea deal. Tr. 56:25-57:2. Because Ray rejected a far more favorable third plea deal and maintained his innocence throughout his case, Ray has failed to demonstrate that he would have accepted the second plea offer by the Government. Thus, Ray can not overcome the strong presumption that counsel's conduct was effective and has failed to satisfy the two-prong test first established in *Strickland*. 466 U.S. at 689.

## V. CONCLUSION

In light of the Fourth Circuit's opinion and for the reasons state above, the undersigned recommends that Ray's § 2255 motion be **DENIED and DISMISSED with prejudice** from the docket.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this opinion/report and recommendation to the petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: April 13, 2015                              /s/ *James E. Seibert*
                                                   JAMES E. SEIBERT
                                                   UNITED STATES MAGISTRATE JUDGE